ALYSSA MILMAN WHITE, ESQ. (SBN 160212)
alyssa@angelowhitelaw.com
SARA ESCALANTE, ESQ. (SBN 323127)
sara@angelowhitelaw.com
**ANGELO & WHITE**
A Professional Corporation
660 Newport Center Drive, Suite 1000
Newport Beach, California 92660
Telephone:  949-640-0800
Facsimile:   949-640-0887

Attorneys for Defendant,
SYMPLE LENDING, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC J. TROUTMAN and TROUTMAN AMIN, LLP;<br><br>                    Plaintiffs,<br><br>          v.<br><br>SYMPLE LENDING LLC,<br><br>                    Defendant. | Case No.: 8:25-cv-01181-JVS-KES<br><br>**DEFENDANT SYMPLE LENDING, LLC'S OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: June 8, 2026<br>Time: 1:30 p.m.<br>Location: 411 W. 4th St., Santa Ana, California, Court Room 10C<br><br>District Judge: James V. Selna<br>Mag. Judge: Karen E. Scott<br>Complaint Filed: May 30, 2025 |

1

# TABLE OF CONTENTS

Table of Authorities ........................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................ 2

I.   Introduction ................................................................................ 2

II.   Statement of Facts ....................................................................... 3

   A. Background and Procedural History ...................................... 3

   B. There is No Evidence of a "Marked and Material Escalation" in Defendant's Use of Its Lion Crest After the Court's Ruling ........... 4

   C. There is No Evidence Defendant Had Knowledge of Troutman's Mark Before Symple Lending Created Its Lion Crest ................. 5

   D. There is No Evidence that Defendant Copied Plaintiffs' "Branding Choices" to "Troll" Plaintiffs ................................ 7

III.   Legal Standard ............................................................................ 8

   A. Standard for Reconsideration ............................................... 8

   B. Standard for Preliminary Injunction ..................................... 9

IV.   Legal Argument .......................................................................... 10

   A. Plaintiffs' Reconsideration Motion is Procedurally Improper & Must be Denied Because There is No Material Change in Circumstances ........................................................................... 10

   B. Plaintiffs' Motion Must Also be Denied Because it Fails to Establish Necessary Grounds for this Court to Issue a Preliminary Injunction ........................................................... 11

     1. Plaintiffs Fail to Establish Likelihood of Success on the Merits ... 11

     2. Plaintiffs Fail to Establish Irreparable Harm ..................... 14

     3. Plaintiffs Fail to Even Address the Balance of Equities or Public Interest Elements of the Test for Preliminary Injunction ... 16

V.   Conclusion ................................................................................... 17

i

**TABLE OF CONTENTS**

**Table of Authorities**

<u>Cases</u>

Alliance for the Wild Rockies v. Cottrell
    632 F.3d 1127 (9th Cir. 2011) ........................................................ 9

AMF Inc. v. Sleekcraft Boats
    599 F.2d 341 (9th Cir. 1979) .................................................. 11, 12

Brookfield Communications, Inc. v. West Coast Entertainment Corp.
    174 F.3d 1036 (9th Cir. 1999) ................................................ 14, 15

Ctr. For Competitive Politics v. Harris
    784 F.3d 1307 (9th Cir. 2015) ........................................................ 9

JL Bev. Co., LLC v. Jim Beam Brands Co.
    828 F.3d 1098 (9th Cir. 2016) ...................................................... 12

Karnoski v. Trump
    926 F.3d 1180 (9th Cir. 2019) ...................................................... 10

Mazurek v. Armstrong
    520 U.S. 968 (1997) ...................................................................... 14

McMichael v. United States Filter Corp.
    2001 U.S. Dist. LEXIS 3918, 2001 WL 418981, at *17
    (C.D. Cal. 2001) ............................................................................. 9

Munaf v. Geren
    553 U.S. 674 (2008) ........................................................................ 9

Network Automation, Inc. v. Advanced Sys. Concepts, Inc.
    638 F.3d 1137 (9th Cir. 2011) ...................................................... 11

O'Connor v. Boeing N. Am., Inc.
    114 F. Supp. 2d 949 (C.D. Cal. 2000) ............................................ 9

Pom Wonderful LLC v. Pur Beverages LLC
    2015 WL 10433693, at *16 (C.D. Cal. Aug. 6, 2015) .................. 14

**TABLE OF AUTHORITIES**

**Table of Authorities (Cont.)**

<u>**Cases (Cont.)**</u>

Thomas v. Bible

 983 F.2d 152 (1993 9th Cir.), cert. denied, 508 U.S. 951 ........................ 10

United States v. Alexander

 106 F.3d 874 (9th Cir. 1997) ........................ 10

United States v. Navarro

 972 F.Supp. 1296 (E.D. Cal. 1997) ........................ 10

Winter v. NRDC, Inc.

 555 U.S. 7 (2008) ........................ 9, 11, 14

<u>Federal Statutes</u>

15 U.S.C. § 1114 ........................ 11

<u>Other Authorities</u>

A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948 ........................ 9

Local Rules of the Central District Court of California, Rule 7-18 ........................ 8, 9

**TABLE OF AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Symple Lending, LLC ("Defendant or "Symple Lending") submits this Opposition to Plaintiffs Eric J. Troutman's ("Troutman") and Troutman Amin, LLP's ("Troutman Amin") ("Troutman" and "Troutman Amin" are collectively referred to as "Plaintiffs") second motion for preliminary injunction.

## I. INTRODUCTION

On June 18, 2025, this Court issued an Order denying Plaintiffs' first motion for preliminary injunction. (*See* ECF No. 29.) The Court found Plaintiffs were not likely to succeed on the merits of their trademark infringement claim because, on balance, the eight-factor *Sleekcraft* test weighed against finding a likelihood of consumer confusion. (*See* ECF No. 29 at 11-12.)

Plaintiffs now seek reconsideration of that Order based on the same factual and legal grounds as their first motion. After sifting through Plaintiffs' baseless and often hyperbolic allegations, the only new evidence presented is two instances of Symple Lending posting pictures on social media of two employee events where its lion crest is displayed (mostly obscurely) in the background.

Plaintiffs based their first motion on this exact same fact pattern. Plaintiffs assert bald exaggerations, inadmissible evidence, and meandering hypotheticals in this second motion to try to fabricate a material change in circumstances. However, the truth is, one year has passed since Plaintiffs filed this lawsuit and they submit no evidence of any actual consumer confusion, no credible evidence Defendant intentionally adopted its lion crest with any knowledge that it was another's trademark, and no evidence of any harm to business or reputation.

This Court's discretion, once exercised, should not be subject to serial reconsideration absent genuinely new circumstances. Plaintiffs' present motion should be denied because Plaintiffs have not demonstrated any material change in

2

circumstances or genuine new evidence to justify reconsideration of the preliminary injunction issue previously adjudicated by this Court.

The present motion should also be denied because Plaintiffs fail to analyze the four-factor test for preliminary injunction and therefore fail to meet their burden of establishing good cause for this Court to grant such extraordinary relief.

For these reasons, Defendant respectfully requests that this Court deny Plaintiff's reconsideration motion for preliminary injunction.

## II. STATEMENT OF FACTS

### A. Background & Procedural History

Houston Fraley founded Symple Lending in 2021. (Declaration of Houston Fraley in Support of Defendant's Opposition to Plaintiffs' Second Motion for Preliminary Injunction ("Fraley Dec.") ¶ 4.) Symple Lending has offices in Tampa, Florida, and Irvine, California. (Fraley Dec. ¶ 5.) Symple Lending operates as a marketing and sales business in the financial services industry. (Fraley Dec. ¶ 6.) Plaintiffs' repeated allegations that Symple Lending sells "predatory high-cost loans to consumers" are harassing, false and defamatory. (Fraley Dec. ¶ 7.)

Plaintiffs are a law firm (Troutman Amin) and a partner of that law firm (Troutman). Troutman's mark is registered in Class 45 for legal services. (*See* Dkt. No. 1, ¶ 6.) Troutman asserts he has continuously used the mark in connection with legal services since April 28, 2022 (*see* Dkt. No. 1, ¶ 3), though he now admits to also using the mark in connection with his current political campaign (Motion at 19:1-3 , 20:13-14).

On June 2, 2025, Plaintiffs filed an Application for TRO and OSC Re: Entry of a Preliminary Injunction, arguing that Defendant began infringing on Plaintiffs' mark in 2025 when it posted content displaying Symple Lending's lion crest on its Instagram and LinkedIn pages. (*See* Dkt. No. 10 at 12-13.)

///

///

3

On June 18, 2025, this Court issued an Order denying Plaintiffs' motion for preliminary injunction finding Plaintiffs not likely to succeed on the merits of their trademark infringement claim. (*See* Dkt. No. 29 at 11-12.)

On May 4, 2026, Plaintiffs filed a second motion for preliminary injunction requesting reconsideration of this Court's Order based on the same grounds that Defendant is posting content displaying Symple Lending's lion crest on its Instagram and LinkedIn pages. (*See* Declaration of William Craddick in Support of Plaintiffs' Second Motion for Preliminary Injunction ("Craddick Dec.") ¶¶ 9-11.)

To date, Defendant has responded to multiple sets of written interrogatories, requests for admissions, and requests for production in this action. (Fraley Dec. ¶ 8.) Defendant has also produced two witnesses for deposition in this action. (Fraley Dec. ¶ 9.) Defendant also made other witnesses available for deposition, including Ted Tsuja and Houston Fraley, however, Plaintiffs chose to take those depositions off calendar and only recently requested to revive them. (Fraley Dec. ¶ 10.)

The discovery cut-off date is July 14, 2026, and jury trial is set for October 27, 2026. (*See* Dkt. 33.)

**B. There is No Evidence of a "Marked and Material Escalation" in Defendant's Use of Its Lion Crest After the Court's Ruling.**

As an initial matter, the Court did not enjoin Defendant from using its lion crest in any way, so Plaintiffs' accusation that Defendant's conduct is illegal is improper. Moreover, Plaintiffs' accusation that Defendant has materially increased the use of its lion crest is not supported by the evidence Plaintiffs submit.

Since the preliminary injunction was denied, Plaintiffs identify two instances of Symple Lending posting content on Instagram and LinkedIn of two employee events where its lion crest is displayed (mostly obscurely) in the background.

The first event was Defendant's employee Christmas party five months ago in December 2025. The only guests invited to this event were employees (no plus ones allowed). (Fraley Dec. ¶ 11.) Defendant posted a total of six photos and one

4

video of the employee Christmas party on two social media pages. (Craddick Dec. ¶¶ 9-10.) It is nearly impossible to identify Symple Lending's lion crest in the photos. (*See* Craddick Dec. ¶¶ 9-10, Ex. B-C.)

The second event was in April 2026 when Symple Lending employees and management celebrated the company's five-year anniversary with some in-office cake, cookies, and balloons. (Fraley Dec. ¶ 12.) Defendant posted two photos of the office festivities to its social media pages. (Craddick Dec. ¶ 11.) The photos include a cake and cookies faintly decorated with Symple Lending's lion crest. (*See* Craddick Dec. ¶ 11, Ex. D.)

This evidence falls woefully short of Plaintiffs' claim that Defendant has embarked on a "public-facing, consumer-directed promotion… across widely disseminated social media channels and large-scale events." (Motion at 19:16-19.)

**C. There is No Evidence Defendant Had Knowledge of Troutman's Mark Before Symple Lending Created Its Lion Crest.**

Symple Lending has used the image of a lion, which was created from scratch by an employee in the Florida office, as an internal emblem to promote company culture since February of 2024. (Fraley Dec. ¶ 13.) The lion symbol represents strength and honor to Symple Lending's employees and signifies the company's ethos of building lasting bonds and banding together with pride as a team. (*Id*.) Symple Lending has used a few iterations of its lion symbol since its inception and started using the current at-issue version on a crest (referred to herein as "Symple Lending's lion crest") in February 2025. (Fraley Dec. ¶¶ 14-18.)

Houston Fraley, who personally commissioned Defendant's lion crest, first saw Plaintiffs' mark on May 24, 2025, when another partner at Plaintiffs' firm, Puja J. Amin, commented on a LinkedIn post regarding the purported similarity of the two lion logos. (Fraley Dec. ¶ 19; *see also* Declaration of Eric Troutman in Support of Plaintiffs' Second Motion for Preliminary Injunction ("Troutman Dec.") ¶ 7, Ex. A, page 3 of 3.)

Plaintiffs maintain "there can be no doubt" of Defendant's deliberate intent because, they allege: "[o]ne of Defendant's founders—Tsuba "Ted" Tsuji—has been in direct contact with Troutman Amin, LLP and Troutman himself. He has seen the firm's email signature and has been directly exposed to the Mark by Troutman personally." (*See* Dkt. 41, FAC ¶ 47.)

Plaintiffs completely ignore that Defendant already refuted this argument by submitting a declaration of Ted Tsuja in support of its Opposition to Plaintiffs' first motion for preliminary injunction, which states Mr. Tsuji is not a founder, Symple Lending was already using its lion crest before Mr. Tsuji started working for Defendant, and that prior to this lawsuit, Mr. Tsuji had no independent recollection of Plaintiffs' mark from any communication or social media connection. (*See* ECF No. 25-8, ¶¶ 6-9; *see also* Fraley Dec. ¶¶ 20-21.)

Moreover, the Court's previous Order found that at oral argument, "Troutman could provide no concrete reason to suspect any connection between Symple Lending and Troutman LLP." The Order further articulated that "[w]hile Troutman argues that discovery could reveal more connections, such position is merely speculative." (*See* ECF. 29 at 10.)  To that point, despite the fact that the hearing for Plaintiffs first motion was on June 17, 2025 and the Order denying it was issued on June 18, 2025, Plaintiffs have not identified any discovery that has revealed "more connections".

Nevertheless, Troutman maintains in the present motion that "Ted Tsuji was a previous acquaintance of Troutman Amin, LLP who had communicated with us on multiple occasions and engaged with the Protected Mark… therefore, we viewed it as a deliberate infringement and an unauthorized effort to align his new brand with Troutman Amin, LLP." (Troutman Dec. ¶ 8.) Troutman again provides no documentary evidence beyond mere speculation because no further connection exists.

6

Defendant submits another declaration from Mr. Tsuji in support of its opposition to the present motion to reiterate that Mr. Tsuji is not a founder of Symple Lending, he started working for Defendant after Symple Lending's lion crest was in use, and prior to this lawsuit he had no independent recollection of Plaintiff's mark from any communication or social media connection the parties may have had. (Declaration of Tsubasa Ted Tsuji filed concurrently herewith in support of Defendant's Opposition to Plaintiffs' Second Motion for Preliminary Injection ("Tsuji Dec.") ¶¶ 6-9.)

There was no evidence presented in the first motion for preliminary injunction that Symple Lending knew about Plaintiffs' mark before adopting its own lion crest, much less acted with deliberate intent to copy it. Here again, there is no evidence presented in the at-issue motion that Symple Lending knew about Plaintiffs' mark before adopting its own lion crest, much less acted with deliberate intent to copy.

## D. There is No Evidence that Defendant Copied Plaintiffs' "Branding Choices" to "Troll" Plaintiffs.

Plaintiffs' first motion for preliminary injunction touted Troutman's considerable financial investments of over seven-figures to feature Plaintiffs' mark in prestigious ad campaigns, such as the Anaheim Duck's hockey rink, the Cal Memorial Stadium and the Haas Pavillion in Berkely, California, the Newport Beach International Boat Show, and at John Wayne Airport, to name a few. (*See* Dkt. No. 1, ¶¶ 34–38.) However, Plaintiffs' present motion would have this Court believe that their most critical "branding choices" center around cookies, cakes, and ice sculptures. Indeed, Plaintiffs now claim "Defendant's conduct appears to be intentional and designed both to confuse consumers and antagonize Plaintiffs" because "Plaintiffs had previously used its Protected Mark on ice sculptures, cakes and cookies." (Motion at 12:8-11.)

Setting aside the fact that Plaintiffs did not invent ice sculptures, cakes, or cookies, Troutman does not submit credible evidence to support this ridiculous assertion. He merely states that "Troutman Amin, LLP had previously used the Protected Mark on ice sculptures, cakes, and cookies that are remarkably similar to those copied by Defendant." (Troutman Dec. ¶ 12.) He does not identify when, where, why, or in front of whom he "previously" (undefined term) served cakes and cookies bearing the mark. Even more incredibly, the only "proof" Troutman attaches to his declaration is a string of personal photos that lack any identification or timestamp, much less any indication the images were ever published publicly.

Nevertheless, to be abundantly clear, Houston Fraley commissioned the ice sculpture, cake, and cookies displaying Defendant's lion crest and prior to doing so he had never seen any image, nor did he have any knowledge, of Plaintiffs' using the same ubiquitous items to feature their mark. (Fraley Dec. ¶ 22.)

There is no evidence to support Plaintiffs' contention that Defendant intentionally copied Plaintiffs' use of ice sculptures, cakes, and cookies to "troll" Plaintiffs or to capitalize on their purported "goodwill."

## III.    LEGAL STANDARD

### A. Standard for Reconsideration

Motions for reconsideration are governed by both the Local Rules of the Central District and by the Federal Rules of Civil Procedure. Central District Local Rule 7-18 governs a motion for reconsideration brought before this Court, and provides:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented   [**5] to the Court before such

8

decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

L.R. 7-18. Thus, the Court cannot grant a motion for reconsideration unless the moving party establishes that one of these circumstances exists. (*See McMichael v. United States Filter Corp.*, 2001 U.S. Dist. LEXIS 3918, 2001 WL 418981, at *17 (C.D. Cal. 2001); *O'Connor v. Boeing N. Am., Inc.*, 114 F. Supp. 2d 949, 950 (C.D. Cal. 2000).)

### B. Standard for Preliminary Injunction

"A preliminary injunction is an 'extraordinary and drastic remedy[.]' 11 A. C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)[.]" (*Munaf v. Geren,* 553 U.S. 674, 689-690 (2008).) The moving party "bears the heavy burden of making a 'clear showing' that it [is] entitled to a preliminary injunction." (*Ctr. For Competitive Politics v. Harris,* 784 F.3d 1307, 1312 (9th Cir. 2015).) To do so, the movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." (*Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).)

In the Ninth Circuit, the *Winter* factors may be evaluated on a sliding scale: "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." (*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).)

///

///

///

9

## IV.   LEGAL ARGUMENT

### A. Plaintiffs' Reconsideration Motion is Procedurally Improper & Must be Denied Because There is No Material Change in Circumstances.

"Under the 'law of the case' doctrine a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (citing *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.), *cert. denied*, 508 U.S. 951, 124 L. Ed. 2d 661, 113 S. Ct. 2443 (1993)).

"That is because, while motions to reconsider are directed to the sound discretion of the court… considerations of judicial economy weigh heavily in the process. Accordingly, before reconsideration may be granted there must be a change in the controlling law, facts, or other circumstances, the need to correct or clear error, or the need to prevent manifest injustice." (*United States v. Navarro*, 972 F.Supp. 1296, 1298-99 (E.D. Cal. 1997).)

The Ninth Circuit has held that a party seeking modification of an injunction order bears the burden of establishing that significant change in facts or law warrants such revision. (*See Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Circ. 2019); *see also United States v. Navarro,* 972 F.Supp. 1296 (1997) (reinforcing the principle that successive motions, including for injunctions, must be grounded in genuinely new evidence or material changes).)

Here, Plaintiffs have not met their burden of establishing that significant changes of fact warrant reconsideration. The evidence shows that after this Court denied Plaintiffs' request for preliminary injunction, Defendant posted photos and a video to its social media pages from two events where its Symple Lending's lion crest was displayed (mostly obscurely) in the background. This is the same conduct that was presented to this court before the Court denied Plaintiffs' first motion for preliminary injunction.

Plaintiffs cite no authority holding Defendant must refrain from using its lion crest following the Court's refusal to issue a preliminary injunction, and Plaintiffs submit no credible evidence to support their claim that Defendant has materially increased its use of its lion crest. For these reasons alone, Plaintiffs' reconsideration motion is procedurally improper and must be denied.

**B. Plaintiffs' Motion Must Also be Denied Because it Fails to Establish Necessary Grounds for this Court to Issue a Preliminary Injunction.**

Plaintiffs have failed to meet their burden to establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm if the preliminary relief is not granted, (3) the balance of equities favors Plaintiffs, and (4) the injunction is in the public interest. (*Winter, supra*, 555  U.S. at 20.)

*1.  Plaintiffs Fail to Establish Likelihood of Success on the Merits.*

To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a plaintiff must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion. (*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,* 638 F.3d 1137, 1144 (9th Cir. 2011) ("*Network Automation*"). Plaintiffs allege they have a protectable ownership interest in the mark, so for the purposes of this Opposition Defendant turns its focus to the likelihood of confusion test.[1]

Courts in the Ninth Circuit consider eight factors to determine whether there is a likelihood of confusion: (1) strength of the mark; (2) proximity or relatedness of the goods; (3) similarity of the sight, sound, and meaning of the marks; (4) evidence of actual confusion; (5) degree to which the marketing channels converge; (6) types of goods and degree of care consumers are likely to exercise when purchasing them; (7) intent of defendants in selecting the infringing mark;

---

[1] Defendant does not concede Plaintiffs' ownership of any trademark rights and plans on seeking cancellation of Plaintiffs' registration.

and (8) likelihood that the parties will expand their product line. *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979) ("*Sleekcraft*").

Of the eight *Sleekcraft* factors, Plaintiffs only appear to address the seventh in their present motion. "Factor seven favors the plaintiff 'where the alleged infringer ***adopted*** his mark with knowledge, actual or constructive, that it was another's trademark.'" (*JL Bev. Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1111-12 (9th Cir. 2016) (internal citation omitted) (emphasis added).)

In denying the first motion for preliminary injunction, this Court found "that Troutman's 'evidence' of intent is speculative and attenuated from a single LinkedIn connection—a ubiquitous form of social media connecting in the professional world… [that] does not provide proof that Symple Lending knew about the logo, much less acted with intent to usurp it." (*See* Dkt. 29 at 10.)

Despite Plaintiffs' assertion during oral argument that discovery would reveal more evidence of Defendant's intent, it has been one year since that hearing, trial is four months away, and Plaintiffs have no additional evidence to support their original theory that Defendant chose its lion crest with knowledge that it was another's trademark or with the deliberate intent to obtain advantage from Plaintiffs' purported "goodwill."

Instead, Plaintiffs urge this Court to apply a different intent standard than that espoused by the Ninth Circuit. Rather than looking at Defendant's intent *at the time it adopted the allegedly infringing mark*, Plaintiffs ask the Court to consider Defendant's intent *after the Court declined to enjoin Symple Lending's use of its lion crest*. However, even under this made-up standard, Plaintiffs do not save themselves because there is no credible evidence to support Plaintiffs' new theory that "the record now demonstrates a marked and material escalation in Defendant's conduct—conduct that strongly supports a finding of intentional infringement and in turn, a heightened likelihood of consumer confusion." (Motion at 16:5-7.)

12

As addressed above, the record demonstrates two additional instances where Defendant posted photos on social media of employee events that show Symple Lending's lion crest somewhere in the background, including on an ice sculpture, cake, and cookies.

Plaintiffs proclaim with righteous indignation that Defendant's use of an ice sculpture, cake, and cookies is "not coincidental: it is compelling evidence of deliberate copying designed to appropriate Plaintiffs' goodwill and create an association in the minds of consumers." (Motion at 17:1-14.) Even if compelling (which it is not), Plaintiffs offer zero proof that they ever publicly published photos featuring their mark on an ice sculpture, cakes, or cookies. The record remains devoid of any evidence that Defendant intended to use or copy Plaintiffs' mark.

Finally, Plaintiffs summarily conclude that "any consumer using LinkedIn, Instagram or other social media platforms that encounters Defendant's recent posts will immediately assume a connection between Troutman Amin, LLP (and Eric J. Troutman) and the Defendant." (Motion at 18:1-3.) However, they offer no new law or evidence to support this argument, and the Court already weighed in on these issues at great length in its original Order. (*See* Dkt. 29.)

Specifically, the Court found that given the lack of proximity or relatedness of goods, it was "unlikely" that a "reasonable consumer could confuse Troutman and Symple Lending by seeing such images that use the same mark." (Dkt. 29 at 6.) Moreover, the Court found that given the broad use of the Internet today, the "mere fact that each party uses the allegedly infringing mark on social media does not automatically create coextensive marketing channels." (Dkt. 29 at 9.) Finally, the Court found the degree of care likely to be exercised by consumers here weighed against finding a likelihood of confusion because "[n]ot only would customers be expected to exercise greater care in selecting a loan servicer or a law firm, but both companies would likely exercise care in explaining the terms of their service to customers." (Dkt. 29 at 11.) These previous findings completely

13

undermine Plaintiffs' argument that Defendant's social media posts are likely to cause consumer confusion, and Plaintiffs offer no new evidence to the contrary.

Based on the foregoing, the *Sleekcraft* factors still weigh against finding a likelihood of confusion and Plaintiffs have therefore failed to meet their burden to establish a likelihood of success on the merits. Accordingly, there is no need for a determination of irreparable harm or balancing of the hardships and Plaintiffs' motion should be denied.

### 2. Plaintiffs Fail to Establish Irreparable Harm.

Even if the Court were to find a likelihood of success on the merits (which is doubtful), this motion should still be denied because Plaintiffs have failed to meet their burden to establish irreparable harm.

"Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curium)).

Plaintiffs' argument that they will suffer harm to goodwill is supported only by conclusory statements of hypothetical harm and is therefore insufficient. (*See, e.g., Pom Wonderful LLC v. Pur Beverages LLC*, 2015 WL 10433693, at *16 (C.D. Cal. Aug. 6, 2015) ("Because Pom Wonderful has adduced no evidence that customers have a negative perception of energy drinks in general or of pûr pŏm in particular, and because it relies solely on Flynn's conclusory assertions of harm, it has not adequately demonstrated that it will likely suffer irreparable harm if consumers associate Hubbard's pûr pŏm product with Pom Wonderful's.")

In the absence of any competent evidence to demonstrate irreparable harm, Plaintiffs make misplaced arguments regarding inapplicable legal doctrine to further their position. For example, Plaintiffs rely on *Brookfield Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036 (9th Cir. 1999)

14

("*Brookfield*") to argue initial interest confusion applies here, which is a legal doctrine that permits a finding of infringement when there is a temporary confusion that is dispelled before the purchase is made. However, *Brookfield* is distinguishable. There, the Ninth Circuit explained that initial interest confusion is akin to posting misleading signage to divert customers such that a sizeable number of consumers who were originally looking for a product or service from one company will simply decide to patronize the other company offering similar products or services instead. (*Id.* at 1062.)

That is not the case here. No one looking for legal services (particularly of the caliber Plaintiffs' purport to offer) is going to be (even temporarily) confused by a financial marketing services company's use of a ubiquitous lion crest, let alone diverted to using Defendant's completely unrelated services as a result. The doctrine of initial interest confusion does not apply here.

Plaintiffs also argue, without any evidence, that Defendant is trying to "message to Defendant's industry competitors suggesting, falsely, that Defendant has the backing of one of the best known law firms in Orange County—and to, therefore, steer clear of any disputes." (Motion at 18:4-7.) Plaintiffs argue this is "classic goodwill misappropriation." (Motion at 20:19-21:5.) These arguments are unavailing.

It does not follow that Defendant, a marketing and sales business in the financial services industry, would in any way benefit from messaging to its "*industry competitors*" that it is represented by Plaintiff, a defense law firm defending against claims under the Telephone Communications Privacy Act ("TCPA"). On what grounds would an industry competitor even have to sue another industry competitor under the TCPA? Plaintiffs do not explain.

But even under the most generous interpretation of Plaintiffs' argument that Defendant is trying to capitalize on Plaintiffs' goodwill, Defendant finds it perplexing and unbelievable that a financial services marketing company (or any

15

company for that matter) would try to bolster its brand or enhance its sales by tying itself to a litigation defense firm. This premise—that a company is going to gain customers by advertising upfront that no matter what bad acts the company commits, its litigation defense team is so lethal that customers should be "scared off litigation by their mere affiliation"—is ludicrous. Absent evidence, which is the case here, these bald assertions are conspiratorial at best and warrant no consideration with regards to the irreparable harm factor.

Finally, Plaintiffs continue to assert in every pleading without any proof that Defendant is a predatory company that mistreats consumers. (*See, e.g.,* Motion at 20:4-15.) This smear campaign is harassing, false, and defamatory. There is no evidence to support these derogatory allegations and Plaintiffs only continue to hurl them because they are cloaked in litigation privilege.

Based on the foregoing, Plaintiffs fail to meet their burden to establish irreparable harm, and the Court should therefore deny their motion.

### 3. *Plaintiffs Fail to Even Address the Balance of Equities or Public Interest Elements of the Test for Preliminary Injunction.*

Plaintiffs' motion references the third and fourth prongs of the four-factor test for preliminary injunction (*see* Motion at 13:19-23), however, the papers do not analyze balance of equities or public interest. Accordingly, Plaintiffs fail to carry their burden with respect to these final two factors, and the Court should therefore deny their motion.

///

///

///

///

///

///

///

16

## V. CONCLUSION

Defendant respectfully requests that this Court deny Plaintiff's reconsideration motion for preliminary injunction because Plaintiffs have failed to meet their heavy burden of showing they are entitled to such extraordinary and drastic relief.

Dated: May 18, 2026                    **ANGELO & WHITE**


                              By: __/s/Sara Escalante_____
                                   ALYSSA MILMAN WHITE, ESQ.
                                   SARA ESCALANTE, ESQ.
                                   Attorneys for Defendant,
                                   SYMPLE LENDING, LLC

17

The undersigned counsel of record for Defendant, Symple Lending, LLC, certifies that this brief contains 4,646 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 18, 2026               **ANGELO & WHITE**


By: _/s/Sara Escalante_____
ALYSSA MILMAN WHITE, ESQ.
SARA ESCALANTE, ESQ.
Attorneys for Defendant,
SYMPLE LENDING, LLC

18